SECURITY STATE FIRE INSURANCE COMPANY *v.* HARRIS.

4-9817                                             251 S. W. 2d 115

Opinion delivered July 7, 1952.

Rehearing denied October 6, 1952.

*Ward Martin,* for appellant.

*Albert G. Sexton* and *Ralph E. Ray,* for appellee.

HOLT, J. This is a suit on two fire insurance policies. Appellees, Mildred Harris, her husband, Rufus Harris, and Lula Brice, owned jointly property in the town of Keo, Arkansas, on which two residences were located. On March 21, 1950, appellant issued to Mildred Harris a fire insurance policy on one of the dwellings and on the same date, a separate policy to Lula Brice on the other dwelling. Both houses were destroyed by fire on April 14, 1950, and separate suits were brought by the owners against appellant. The insurance company defended in each case on the sole ground that since title to the property was held jointly by the two appellees and another, there was a violation of the following provision in each policy: "The Company shall not be liable . . . if the interest of the insured be or become other than the entire, unconditional and unencumbered sole ownership of the property," and there could be no recovery on their policies.

The causes were consolidated for trial and at the close of all the testimony the court instructed a verdict for each plaintiff.

On this appeal, appellant argues that the court's action was an invasion of the jury's province. We do not agree.

While the rule is well settled that a sole ownership clause in a fire insurance policy is valid and voids the contract if the ownership is otherwise (*Franklin Fire Insurance Company* v. *Holmes,* 188 Ark. 1053, 69 S. W. 2d 281), it is equally well settled that this clause may be waived by the insurer as when it has been informed of the nature of the title (*State Mutual Insurance Co.* v. *Latourette,* 71 Ark. 242, 74 S. W. 300), and when it requests proof of loss with knowledge of violation of the sole ownership provision.

Here, the plaintiffs testified positively that they informed appellant's agent of their joint ownership before the policies were issued and that proofs of loss were made at appellant's request and delivered to it.

Appellee, Lula Brice, testified relative to proof of loss: "Q. When did the agent come down to take a statement regarding the proof of loss? A. I wasn't there. Q. When did he come down there? A. Some time after the fire. Q. You weren't at home when the agent came the first time? A. No, sir. Q. Did he come back again and bring some papers to be signed? A. Yes, sir. Q. Did your daughter-in-law sign some papers for you at that time? A. That was after the fire. Q. Yes, sir. Q. What papers did she sign? A. I don't know."

Appellee, Mildred Harris, testified: "Q. After the house burned did you notify the Insurance Company? A. Yes, sir. Q. Did they take proof of loss of your house? A. Yes, sir. Q. What happened? A. The agent came out. Q. Did you furnish him with the proof of loss? A. Yes, sir. Q. Has the Insurance Company paid you anything by reason of your loss you sustained? A. No, sir. Q. You have received nothing from the Company? A. No, sir. * * * Q. After the fire, did an agent of the company come out and bring some papers for you to sign? A. I signed one for my mother-in-law (Lula Brice) and one for myself. Q. The agent brought the papers out to you? A. Yes, sir. CROSS-EXAMINATION: BY MR. MARTIN: Q. Are these the papers you signed (handing witness documents)? A. Yes, sir. If it please the court, we would like to introduce them. THE COURT: Let them be in-

troduced and made a part of the record. (Said documents are hereby introduced, for identification, are marked exhibits 'C' and 'D' and are next following in the record.) REDIRECT EXAMINATION: BY MR. SEXTON: Q. Who filled out these papers? A. The man did. He done everything but where by name is. Q. Where you signed the papers. A. Yes, sir. Q. When the proof of loss was taken, did this man tell you that the company would pay you $900? A. Yes, sir, Q. I see that he didn't even fill out the full amount. A. He said that I would get one third of it. Q. He filled this out himself and said that he wasn't going to pay you but this amount? A. Yes, sir. Q. He didn't fill it out for the full amount, still you suffered a total loss. A. Yes, sir. Q. When you signed this paper, you thought that he was going to pay you the full amount? A. Yes, sir.''

Standing alone, the testimony of appellees, being interested parties, could not be considered as undisputed and therefore would not be sufficient to warrant the action of the court.

The record reflects, however, that their testimony does not stand alone. It is undisputed that appellant asked for, procured, and introduced in evidence proofs of loss from appellees and put them to the trouble and expense of perfecting these proofs. Just what these proofs of loss, prepared and made out by appellant's agent, contained, we do not know for the reason that though introduced in evidence and were before the trial court, they were not brought forward in the transcript. We must assume, therefore, that they contained matter or admissions against appellant that constituted a waiver of the absolute ownership provision and warranted the action of the court in directing a verdict for appellees, in the circumstances. It is a well settled rule that where the record on appeal does not contain all the evidence adduced at the trial, this court indulges the presumption that the evidence was sufficient to sustain the judgment. See cases listed in West Ark. Digest, Appeal and Error, § 907 (4).

This court held in *German Insurance Co.* v. *Gibson,* 53 Ark. 494, 14 S. W. 672: (Headnote 1) ''Insurance

policy—Waiver of forfeiture. Forfeitures are not favored in law; and any agreement, declaration or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by conformity on his part, will estop the company from insisting upon the forfeiture." (Headnote 2) "If an insurance company, after it learns through its adjuster that the party insured has made misrepresentations in his application, asks for and accepts proof of loss, it waives a forfeiture for such misrepresentations," and in the body of the opinion, it was said: " 'Forfeitures are not favored in the law; and . . . courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture.' . . .

"Under this state of facts the company was bound by the knowledge of the agent. . . . with a full knowledge of all the acts constituting the forfeiture claimed in the trial, put the plaintiff to the inconvenience, trouble and expense of perfecting his proof of loss. If the defense of forfeiture was good, all this trouble and expense were wholly unnecessary. A reliance on the alleged forfeiture was entirely inconsistent with such a course of conduct. By that conduct the company waived the forfeiture, and estopped itself from setting it up as a defense. . . .

"There was evidence tending to prove that the forfeiture for false representations was waived when plaintiff was permitted and encouraged to submit proofs, without claim of forfeiture. This waiver could not afterwards be retracted," and in *Mutual Relief Association*

v. *Weatherly*, 172 Ark. 991, 291 S. W. 74, we said: " 'And so it has become a well-established rule that, where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so, the jury may draw an inference that it would be unfavorable to him.' "

"Effect of failure to produce when in party's power. The non-production of evidence clearly within the power of a party, creates a strong presumption that if produced, it would be against him." *Miller* v. *Jones, Adm'r.*, 32 Ark. 337 (Headnote 3).

Affirmed.

Mr. Justice GEORGE ROSE SMITH dissents.

GEORGE ROSE SMITH, J., dissenting. There were questions for the jury. The complaints alleged that the two houses burned, resulting in losses in stated amounts. The answer contained a general denial and a plea of the sole ownership clause. The plaintiffs offered only their own testimony, which the jury was not required to believe, and the defendant showed that the plaintiffs were not the sole owners of the property. Hence the jury might have found that (a) no fire occurred, (b) the losses were smaller than alleged, or (c) the sole ownership clause was violated.

But, say the majority, we must assume that the missing proofs of loss contained admissions against the insurer that constituted a waiver of these matters. There are two answers to this suggestion. First, the evidence shows that it was the plaintiffs who signed the proofs; so any admissions therein were the plaintiffs' admissions and could not be regarded as undisputed evidence. Second, we held in *Boyington* v. *Van Etten*, 62 Ark. 63, 35 S. W. 622: "The objection that the bill of exceptions does not show that it contained all the evidence is not well taken in a case like this, where the judgment is based on a total want of evidence on the part of defendants, however well founded it might be in a case determined on the weight of evidence. The answer to the

objection in this case is that the bill of exceptions shows some evidence on the part of defendant, and when, as in this case, the appeal is taken to correct the error of the lower court in refusing to permit the jury to consider this evidence, whatever may be its weight or value, all the evidence in the case is not needed." Here the transcript before us shows that there was not "a total want of evidence" on the part of the appellant. The *Boyington* case is exactly in point and requires a reversal.