CITY OF FT. SMITH *v.* MIKEL.

5-2111                                    335 S. W. 2d 307

Opinion delivered May 2, 1960.

[Rehearing denied June 6, 1960]

*Pettus Kincannon; Heartsill Ragon; Hugh Bland; G. Byron Dobbs,* for appellant.

*Sam Sexton, Jr., John G. Holland, Lawrence S. Morgan,* for appellee.

ED. F. McFADDIN, Associate Justice. In this suit, brought by the City of Fort Smith seeking to quiet title to certain lands, there have been developed some very

interesting matters, involving both the early history of the Fort Smith area, and also the location of a portion of the western boundary of the State of Arkansas. It is a great temptation to lose sight of the legal issues in stating the matters of historical interest; but the applicable and governing rule of law is that stated by Mr. Justice BATTLE in *Chapman & Dewey* v. *Bigelow*, 77 Ark. 338, 92 S. W. 534, to the effect that a plaintiff seeking to quiet title must prove his own title and recover on the strength of his own title and not on the weakness of the title of his adversary.

As aforesaid, the City of Fort Smith brought this suit to quiet its title to certain described lots and also to all of the area lying between such described lots and the Arkansas and the Poteau Rivers on the west. The lots were Lots 1 to 19, in Block 3; Lots 1 to 16, in Block 4; and Lots 1 to 7, in Block 6, of West Fort Smith, an addition to the City of Fort Smith, Arkansas. Appellee Mikel asserted no title to the 42 lots, but asserted title to the area between the described lots and the two rivers. The Chancery Court rendered a decree quieting the title of the City of Fort Smith to the 42 lots, but refusing to quiet the title to the area between the said described lots and the two rivers; and from that decree the City of Fort Smith brings this appeal.

The facts developed, plus those known judicially, present the following picture: By the Act of June 15, 1836, the Congress of the United States admitted Arkansas as a Sovereign State, "on an equal footing with the original States in all respects whatever"; and this Act of Admission[1] defines the western boundary of Arkansas, as beginning at the southwest corner of the

---

[1] This is the Act of June 15, 1836, found in 5 U.S. Statutes at Large 50, Chapter 100; and also may be found on Page 297 of Vol. 1 of the Arkansas Statutes Annotated of 1947. The said Cherokee Treaty of May 26, 1828, may be found on Page 1011 *et seq.* of Volume 8 of the Laws of the United States of America, as published in 1835; and Article 1 of that treaty reads: "The Western boundary of Arkansas shall be, and the same is hereby defined, viz: A line shall be run, commencing on Red River, at the point where the Eastern Choctaw line strikes said river, and run due north with said line to the River Arkansas, thence in a direct line to the southwest corner of Missouri."

State of Missouri, ''and from thence to be bounded on the west to the north bank of the Red River by the lines described in the first article of the Treaty between the United States and the Cherokee Nation of the Indians, west of the Mississippi, made and concluded at the City of Washington on the 26th day of May, in the year of our Lord one thousand eight hundred and twenty-eight; . . .''

The Arkansas Constitution of 1836, and each subsequent Constitution, contains similar language for the western boundary of the State.[2]  But this western line boundary, ignoring natural boundaries such as water courses, proved unsatisfactory; so the Congress of the United States, by Act of February 10, 1905, gave Arkansas authority to extend its western boundary.[*]  The Act of Congress reads:

''The consent of the United States is hereby given for the State of Arkansas to extend her western boundary line so as to include all that strip of land in the Indian Territory lying and being situate between the Arkansas State line adjacent to the city of Fort Smith, Arkansas, and the Arkansas and Poteau Rivers, described as follows, namely:  Beginning at a point on the south bank of the Arkansas River one hundred paces east of old Fort Smith, where the western boundary line of the State of Arkansas crosses the said river, and running southwesterly along the south bank of the Arkansas River to the mouth of the Poteau; thence at right angles with the Poteau River to the center of the current of said river; thence southerly up the middle of the current of the Poteau River (except where the Arkansas State line intersects the Poteau River) to a point in the middle of the current of the Poteau River opposite the mouth of Mill Creek, and where it is intersected by the middle of

---

[2] Reference is made to Vol. 1 of Ark. Stats. Anno. of 1947: the Constitution of 1836 is on Page 239; the Constitution of 1861 is on Page 253; the Constitution of 1864 is on Page 264; the Constitution of 1868 is on Page 279; and the present Constitution of 1874 is on Page 23.

[*] This Act may be found in 33 U.S. Stat. at Large 714, Chapter 571; and may also be found on Page 302 *et seq.* of Volume 1 of Ark. Stats. Anno. 1947.

the current of Mill Creek; thence up the middle of Mill Creek to the Arkansas State line; thence northerly along the Arkansas State line to the point of beginning: Provided, That nothing in this Act shall be construed to impair any right now pertaining to any Indian tribe or tribes in said part of said Indian Territory under the laws, agreements, or treaties of the United States, or to affect the authority of the Government of the United States to make any regulations or to make any law respecting said Indians or their lands which it would have been competent to make or enact if this Act had not been passed.''

The Arkansas Legislature accepted the additional territory by Act No. 41 of 1905, which, without the preamble, may now be found in § 5-101, Ark. Stats.; and the validity of such extension of boundary has been upheld by this Court. *State* v. *Bowman*, 89 Ark. 428, 116 S. W. 896; and *Bowman* v. *State*, 93 Ark. 168, 129 S. W. 80. The Act of Congress and the Act of Arkansas transferred the said territory to Arkansas, but did not affect the title of the Indians or others owning any of the ceded territory. In 1904 John J. Fisher had platted the ''Town of West Fort Smith, Choctaw Nation Indian Territory''; and this town was immediately west of the then western boundary of Arkansas and east of the Arkansas and Poteau Rivers.[3] It was a strip approximately 5,400 feet north and south, and varying, east and west, from nothing to a width of approximately 635 feet. This town consisted of a number of lots, contained in thirteen blocks, which were numbered 1 to 13 from north to south. In 1909 the City of Fort Smith annexed the theretofore platted ''Town of West Fort Smith, Choctaw Nation Indian Territory'' to the City of Fort Smith, Arkansas. In 1908 town lot patents were issued from the Choctaw and Chickasha Nations to various individuals; and the City of Fort Smith claims title to the 42 lots by mesne conveyances from the said individuals.

---

[3] The interesting fact is, that the site of the old original 1817 fort was located in this strip.

The Chancery Court, in the present case, quieted the title of the City of Fort Smith to the 42 lots and abutting streets and alleys, but refused to quiet the title of Fort Smith to the area lying between the said lots and the Arkansas and Poteau Rivers. Such refusal resulted in this appeal. As stated in the early portion of this opinion, the law is well established that a plaintiff seeking to quiet title must prove his own title and recover on the strength of his own title and not on the weakness of the title of his adversary.[4] The learned Chancellor delivered an excellent opinion, applying this rule. The opinion is in the transcript and has proved of benefit to us. We consider now Fort Smith's claim to title to the area between the platted lots and the rivers.

I. *The City of Fort Smith claims that the* 1904 *Fisher plat of "West Fort Smith, Choctaw Nation Indian Territory", showing the lots and blocks, was intended to cover all of the area between the Arkansas boundary and the two rivers; and therefore the lots owned by Fort Smith extend to the two rivers.*

The basis of this contention is the statement of the surveyor on the plat, which says that he has surveyed and staked the town, "*comprising* the strip of land lying between the City of Fort Smith and the Arkansas and Poteau Rivers". The appellant contends that the word, "comprising", necessarily means all of the land. However, the surveyor did not say it was comprising "*all*"; and it could, and did in fact, comprise less than all. We cannot shut our eyes to obvious facts. The size and width of each lot, block, and alley in the Town of West Fort Smith is given in definite footage on the plat, and such measurements on the plat must prevail. See *Beardsley* v. *Nashville*, 64 Ark. 240, 41 S. W. 853.

Furthermore, there was introduced in evidence, without objection, a survey made in 1958, which showed that

---

[4] Heretofore we have cited *Chapman & Dewey* v. *Bigelow*, 77 Ark. 338, 92 S.W. 534, as stating the rule. We have many other cases to the same effect: See *Mason* v. *Gates*, 82 Ark. 294; 102 S.W. 90; *Sanders* v. *Boone*, 154 Ark. 237, 242 S.W. 66, 32 ALR 461; and the scores of other cases collected in West's Arkansas Digest, "Quieting Title", Key No. 10.

there is an area lying between the platted lots and the Arkansas and Poteau Rivers, and that this strip varies in width from a few feet to as much as 200 feet. It was clearly established by plaintiff's witnesses that the strip could not be the result of any accretions because the strip had a rock outcropping on the banks of the Arkansas and Poteau Rivers. There are still present iron rings fastened into this rock ledge, and history students tell us that these rings were used for boats to anchor many, many years ago. In *Chapman & Dewey* v. *Bigelow,* 77 Ark. 338, 92 S. W. 534, Mr. Justice BATTLE, speaking for the Court, quoted extensively from *Horne* v. *Smith,* 159 U. S. 40, 15 S. Ct. 988, 40 L. Ed. 68, to the effect that when a map shows a given distance in footage, the area cannot be extended to a distant water course far beyond the stated distance. That rule is applicable here. So we must — under the facts — hold that the 1904 plat by Fisher *did not cover the entire area* between the Arkansas boundary and the two rivers to the west.

II. *The City of Fort Smith claims: "The undisputed evidence shows that any land that might exist between the Arkansas and Poteau Rivers to the westerly lot lines in West Fort Smith has been used by the public for many years, and a title has been acquired by the City by prescription".* The use by the public could have created a prescriptive right in the public, but not in the City of Fort Smith as distinct from the public; and the City has offered no evidence of its own adverse possession so as to establish any sort of title as distinct from the public. In *Packet Co.* v. *Sorrells,* 50 Ark. 466, 8 S. W. 683, there was involved the use by a municipality for warehouse purposes, of a portion of a dedicated street. Mr. Justice BATTLE stated: ". . . land dedicated by the owner as a street to the use of the public cannot lawfully be used for any other purpose; . . . the authorities of the town or city in which the same is situate cannot lawfully appropriate or divert it to uses and purposes foreign to those for which it was dedicated; . . ." Those statements are applicable here. If the area between the described lots and the rivers became a public

way by prescription, then the City cannot use the public way for any purpose foreign to the public way. Certainly the City would acquire no proprietary rights distinct from the public. In short, no claim of "prescription" can give the City title to the area west of the lots.

III. *Finally, the City of Fort Smith claims that since it owns the lots which abut on the public area to the west, and since the area has not been developed, there is, therefore, an abandonment of the area, the same as the abandonment of a street or alley; and that the City's title, therefore, extends to the rivers.* But this contention overlooks entirely the fact that the plat made in 1958, and introduced in this case without objection, shows a street or roadway existing in 1958 and being between the platted lots and the area to the west. Furthermore, the City showed by its own witnesses that the river front area has been from time immemorial used as a landing place; so no abandonment has been shown. Use by the public, originally established by showing the rings imbedded in the stone ledge for boat landings, is never shown to have been abandoned. So the City can claim no title through abandonment.

## CONCLUSION

We are tremendously impressed by the public spirit that has activated the citizens of Fort Smith to acquire title to the entire area, originally known as "Belle Point", but later identified by the name of "Coke Hill". Outstanding citizens of Fort Smith have made a detailed study of the project; and it is hoped that when title to the full area has been acquired, Belle Point will be made into an historic monument and the old 1817 Fort will be restored. It is a splendid historic undertaking; and we are impressed by the zeal of the Sebastian County Bar, which undertook to clear the title. But the Chancery Court correctly applied the applicable law, which is, that a plaintiff seeking to quiet title must prove his own title and recover on the strength of his own title and not on the weakness of the title of his adversary.

The City of Fort Smith was unable to show any title to the area between the platted lots and the rivers; and, therefore, the Chancery decree was correct to that extent. But when we hold — as we do — that the City cannot quiet title to such area, it does not follow by any means that the appellee Mikel is entitled to the area. Mikel's attorneys admitted in the oral argument before this Court that it was not the intent of the decree of the Chancery Court to quiet Mikel's title. There is a sentence in the decree — which probably came in by inadvertence — that, as between Mikel and Fort Smith, Mikel succeeded to the title.[5] It was never intended by this to quiet Mikel's title; and we modify the decree by striking out the said Finding No. 15 and the portion of the decree incorporating it; but in all other respects the decree of the Chancery Court is affirmed. It is not for us in this case to decide whether Mikel owns the land, which the City may undertake to acquire by eminent domain,[6] or whether the title to the disputed area is still in the Indian Tribes, which title the City may undertake to acquire by negotiation. These matters are beyond the purview of the present litigation: all we now hold is, that the Chancery decree was not in error in refusing to quiet title in the City of Fort Smith to the area lying between the platted lots and the two rivers.

HARRIS, C. J., and WARD, J., dissent.

---

[5] This is Item 15 in the decree, and reads as follows: "The Court finds that as between Mikel and the City of Fort Smith by virtue of the aforesaid deed to William J. Ray in 1918 and 1919, William Mikel succeeded to title to any land lying west of the lot lines of West Fort Smith as platted by John F. Fisher, and east of the Arkansas River and Poteau River to the mean highwater mark on the Arkansas River, and to the center of the Poteau River insofar as it bounds the lands in controversy."

[6] See *Packet Co.* v. *Sorrells*, 50 Ark. 466, 8 S. W. 683.