John P. CORN *v.* ARKANSAS WAREHOUSE
CORPORATION et al

5-4265

Opinion delivered October 2, 1967

*Frank Warden Jr.*, for appellant.

*James R. Howard* and *Moses, McClellan, Arnold,
Owen & McDermott*, for appellees.

JOHN A. FOGLEMAN, Justice. Appellant brought this action to quiet his title to a tract of land in the SW¼ NW¼ of Section 14, Township 1 North, Range 12 West in Pulaski County described by a metes and bounds description. He claimed title by a quitclaim deed dated February 26, 1962, from the Chicago, Rock Island and Pacific Railroad Company, alleging a claim of title from T. P. Blunt and wife, M. J. (or M. A.) Blunt. Blunt was admittedly a source of title common to the parties. Appellant also claimed title by payment of taxes for seven years under color of title and fifteen years on vacant, wild and unimproved lands. He sought to cancel as clouds on his title any and all documents under which appellees claim to have owned, purchased or redeemed all or any part of the lands.

Appellees filed a general denial of the allegations of appellant's complaint and prayed dismissal thereof. The chancellor held that appellant failed to meet the burden of proof imposed upon him and dismissed his complaint for want of equity. This appeal is from that decree.

The lands involved were part of a tract known as the Blunt Five-Acre Tract, being a square in the Southwest Corner of the NW¼ of Section 14, Township 1 North, Range 12 West. The entire tract was purportedly conveyed to W. P. Brady, as trustee, by T. P. and M. J. Blunt, his wife, by quitclaim deed on July 31, 1906, and in turn by warranty deed executed by Brady and wife to the railroad company on June 6, 1907. The railroad company purported to convey to appellant the lands described in his complaint by quitclaim deed dated February 26, 1962. At that time appellant was admittedly the owner of a one-acre square in the northwest corner of the Blunt tract. The tract described in the deed from the railroad company to appellant contained approximately three-fourths of an acre and lay immediately east of the one-acre tract already owned by appellant. It was bounded on the east by the right-of-way of the

Little Rock expressway and on the south by the right-of-way of the railroad company.

It was shown that a one-acre square lying immediately east of appellant's one acre in the northwest corner of the Blunt tract had been conveyed by Thomas P. Blunt and M. A. Blunt, his wife, to Belle Anderson by warranty deed on June 26, 1884. This deed was recorded in the deed records of Pulaski County on June 29, 1885. On March 6, 1963, one Maria Scott executed a warranty deed conveying a tract which would include all of the tract claimed by appellant under the deed from the railroad.[1] Appellees offered the testimony of one Elisha Jackson, a minister, to establish that Maria Scott was the daughter and sole surviving heir of Belle Anderson. If his testimony be given full credit, the appellees have record title by virtue of the earlier deed from the Blunts for all of the tract claimed by appellant except for a small triangle on the east not included in the one-acre tract conveyed to Belle Anderson.

Appellant attacks the credibility of Jackson and says that no weight should be given to his testimony. He says that the witness's answer showed confusion and that if he is correct as to the date of death of Belle Anderson, she would have been 100 years old, as indicated by a Pulaski County certificate of marriage of an Isabella Spears to Green Anderson.[2] It appeared from other conveyances introduced that Green Anderson was the husband of the grantee in the deed from the Blunts. Although at one point on cross-examination, Jackson said that Belle Anderson died three or four

---

[1] Another warranty deed executed by Maria Scott on June 1, 1966, subsequent to the filing of this action, was received in evidence. This deed was identical to the first except that it contained a recital that Maria Scott was the sole surviving heir of Belle Anderson.

[2] The marriage certificate shows that Isabella Anderson was 17 years of age when she married Green Anderson in 1878. Jackson said that she died 13 or 14 years ago. This would have made her 92 years of age, at the most.

years before Green Anderson, he positively testified both on direct and cross-examination that she married after Green's death and gave other testimony indicating that she survived him. He did not know Green Anderson as well as he did Belle because the former did not attend church but she did. The witness said he lived within three blocks of them. He did not know whether Maria Scott was Green's daughter or not. Appellant introduced a deed dated December 11, 1918, from a *Bell* Anderson, widow of Green Anderson, conveying other lands in the vicinity to one Lula Bowers, recited in the deed to have been the only known blood relative of Green Anderson. The deed also contained a recitation that it was made in fulfillment of a request made by Green Anderson during his last illness. An affidavit by the grantor recorded as a part of this document states he died April 22, 1918. If Maria Scott was not the daughter of Green Anderson, but was the daughter of his wife, legitimate or not, this deed would not necessarily be contradictory to Jackson's testimony. We cannot say that the trial judge, who saw and heard the witness, should have given this testimony no weight, nor should we entirely discard it here, since the trial court had the opportunity to observe the witness, notice his demeanor in answering questions and his interest or lack of interest in the case. *Little* v. *Holt*, 229 Ark. 627, 318 S. W. 2d 157. Appellant was unsuccessful in showing record title in himself to the tract in dispute because of the earlier deed to Belle Anderson, regardless of the weight to be given to the Jackson testimony.

The major thrust of appellant's argument seems, however, to be based upon the contention that his title should be confirmed because the railroad company had paid taxes on the land for more than fifteen years. He relies on Ark. Stat. Ann. § 37-102 (Repl. 1962) providing that payment of taxes for seven years on unimproved and unenclosed land shall be deemed to be possession if the taxpayer has color of title. He also relies on § 37-103 providing that payment of taxes on such lands for a period of fifteen years creates a presump-

tion that the taxpayer or its predecessor in title held
color of title to said land prior to the first payment
and that all such payments were under color of title.

In this respect he relies on the testimony of one
W. A. Nickerson, an abstractor since 1962 and prior to
that time, Land and Tax Agent for the Chicago, Rock
Island and Pacific Railroad Company for 34 years. He
was in charge of right-of-way, payment of taxes and
other matters pertaining to real estate. Through him
various plats were introduced to support his testimony
that the tract in question was within the boundaries of
the property in the right-of-way of the railroad, even
though he stated that the only purpose for which this
tract was used was for a borrow pit when they needed
dirt in 1944 and again in 1953. He stated that during
all the years he was with the railroad the taxes on its
right-of-way were always paid by paying each county
tax collector the amount of taxes due on railroad prop-
erties. These payments were based on total assessment
of miles of trackage, side tracks, buildings and right-of-
way real estate as certified by the Arkansas Tax Com-
mission (now Tax Division of the Public Service Com-
mission). The tax receipt for 1935 was introduced as
typical. It shows payment of taxes of Choctaw, Okla-
homa and Gulf Railroad Company.[3] No description of
any property of any kind appears on this receipt. This
witness handled the sale of the property to appellant
and saw that the property was taken off the right-of-
way description on the tax books. He identified a tax
assessor's description change covering this change. This
memorandum purported to list certain lands in Section
14, Township 1 North, Range 12 West which had pre-
viously been listed on the tax books as right-of-way, to-
gether with an additional one-acre square and to show
new descriptions resulting from the conveyance from
the railroad to Corn, the taking of certain highway
right-of-way and a deed for a tract from Corn to the

---

[3]He stated that this was the main line and Hot Springs
branch of the Chicago, Rock Island & Pacific Railroad Company.

railroad company. The descriptions of the tracts noted as being right-of-way were void for indefiniteness. There was also introduced a certificate of the county clerk as to certain real property descriptions appearing on the tax books for the years 1956 and 1960 and assessed in the name of "C. R. I. & P. RR" and for the year 1962 in the name of John P. Corn. These descriptions are also void for indefiniteness, referring to "SW cor of Blount Tract W of QL" and "Pt SW NW of Blounts 5 ac tr". *Rhodes* v. *Covington,* 69 Ark. 357, 63 S. W. 799; *Teer* v. *Plant,* 238 Ark. 92, 378 S. W. 2d 663. No other evidence as to the payment of taxes by the railroad on the lands included in the right-of-way assessed by the Tax Division of the Public Service Commission or its predecessors was offered. No explanation of the failure to offer the official records showing the land descriptions constituting the railroad right-of-way was given.[4] Under Ark. Stat. Ann. § 84-601 (Supp. 1965) and § 84-603 (Repl. 1960) these properties of a railroad company are to be reported by the railroad to this assessing authority annually.

In addition to the deed from Maria Scott, appellees claim title by virtue of a tax deed from the Commissioner of State Lands dated September 10, 1946. This deed was based upon a forfeiture of a tract described as "'T. P. Blunt 5 acre tract W of Quapaw Line SW¼ NW¼ Sec. 14, T. W of 1 N, Range 12 W, 1.10 acres'", admittedly a description void for indefiniteness. An effort to correct the description was made in the deed. Even if the purportedly corrected description could be said to be sufficiently definite, the state's title is based upon the description under which the tax sale and forfeiture were had and no title was thereby conveyed. In view of the disposition we make of the case, this deficiency is of little significance.

---

[4]Appellant's attorney sought to make an explanation in oral argument but this was not in evidence before the chancellor nor is it in the record here.

In a suit to quiet title the petitioner must rely on the strength of his own title, not the weakness of his adversary's. *Lawrence* v. *Zempleman,* 37 Ark. 643; *Chapman & Dewey Land Co.* v. *Bigelow,* 77 Ark. 338, 92 S. W. 534 (error dism. 206 U. S. 41, 27 S. Ct. 679, 51 L. Ed. 953); *Gibbs* v. *Pace,* 207 Ark. 199, 179 S. W. 2d 690; *City of Fort Smith* v. *Mikel,* 232 Ark. 143, 335 S. W. 2d 307; *Brown* v. *Masterson,* 240 Ark. 880, 402 S. W. 2d 666. The burden of proof to establish title was upon appellant. *Morris* v. *Breedlove,* 89 Ark. 296, 116 S. W. 223; *Rushing* v. *Thompson,* 208 Ark. 248, 185 S. W. 2d 941; *City of Fort Smith* v. *Mikel, supra.*

Appellant first contends that the decree appealed from is erroneous ''as not deciding the issues between the parties''. This is actually an argument that the case should be tried de novo—an assertion that can hardly be the subject of any dispute. Appellant then contends that his title should be quieted on trial de novo. But, except as to the small triangular tract, we agree with the trial court that appellant failed to meet his burden to show his own title. The record title to the remaining lands is either in appellee Arkansas Warehouse Corporation, or the heirs of Belle Anderson. The testimony of Nickerson is not sufficiently clear to justify quieting appellant's title by reason of the payment of taxes required by either § 37-102 or § 37-103. The official record of the property included in the assessment of the railroad right-of-way should have shown without question whether these lands were included. The failure of appellant to produce these records or satisfactorily explain this failure may be taken to indicate to the trier of the facts that their production would have revealed evidence adverse to appellant's position. Failure of a party to produce a written instrument upon which he relies or which would tend to establish an issue of fact, when within his power to do so, creates a presumption that its production would disprove his contention. *Ramey* v. *Fletcher,* 176 Ark. 196, 2 S. W. 2d 84; *Miss. R. Fuel Corp.* v. *Young,* 188 Ark. 575, 67 S. W. 2d 581; *Sparkman Hard-*

*wood Lbr. Co.* v. *Bush,* 189 Ark. 391, 72 S. W. 2d 527; *Security State Fire Ins. Co.* v. *Harris,* 220 Ark. 900, 251 S. W. 2d 115.

Appellant also asserts that it was incumbent upon defendants to plead and prove whatever grounds for relief they might have. We need not determine what effect, if any, the failure of appellees to assert their title and ask that it be quieted may have upon any future action, but certainly this failure to do so does not entitle appellant to the relief sought by him in spite of his failure to meet his burden of proof.

We find that appellant was entitled to have his title quieted as to the triangular tract of land included in the deed from the railroad company to appellant lying east of the tract conveyed by the Blunts to Belle Anderson. As to this tract, the decree is reversed and the cause remanded for the entry of a decree quieting title in appellant as against appellees. As to the remainder of the tract, the decree is affirmed.

BYRD, J., disqualified and not participating.