**UNITED STATES of America**

v.

**9.41 ACRES LOCATED IN SEBASTIAN COUNTY, ARKANSAS; Wharfage, Inc.; Doris J. Mikel.**

**Civ. No. 88–2177.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Nov. 8, 1989.

J. Michael Fitzhugh, U.S. Atty., Fort Smith, Ark., for plaintiff.

W. Asa Hutchinson, Martin, Vater, Karr & Hutchinson, Sam Sexton, Jr., Sexton Law Firm, Fort Smith, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

This is a case of land condemnation in which the United States of America, using its constitutional power of eminent domain, acquired title to 9.41 acres of land located in Sebastian County, Arkansas. The land in question is adjacent to the Fort Smith National Historic Site, Fort Smith, Arkansas, and borders the Arkansas and Poteau rivers. A portion of the land is known as Belle Point.

Prior to the government acquiring title, the land in question was owned by Doris J. Mikel and Wharfage, Inc. The precise division of ownership concerning the land is disputed. The tract of land for discussion purposes can be broken down into three parcels. Tract "A" consists of the parcel of land beginning at the southern end of Block 6, Lot 7 of the Plat of West Fort Smith and extends north to the center point of the abandoned Missouri Pacific Railroad right-of-way. Tract "B" begins at the center point of the abandoned right-of-way and extends north to the end of Block 509. Tract "C" is the parcel of land consisting of the abandoned railroad right-of-way. Attached as Exhibit "A" is a portion of the plat submitted to the court as Mikel's Exhibit "2". The three tracts of land are marked on this exhibit.

Both Mikel and Wharfage agree that Tract "C" is wholly owned by Mikel. Thus, the dispute centers on the ownership of Tracts "A" and "B". Mikel contends she owns 100% of Tract "B" and 50% of Tract "A". Wharfage contends it owns 50% of both Tract "A" and "B".

On June 12, 1989, the court held a hearing in this matter to discuss the ownership issue. In light of the disputed ownership, it became apparent that the three tracts would need to be valued separately. The court was advised that none of the parties were prepared to offer evidence on the respective values of Tracts "A", "B", and "C". Rather, the parties and their valuation experts had valued the entire 9.41 acres as a whole. This was done despite the fact it was known to all that the ownership dispute discussed *supra* existed. At the conclusion of the hearing the parties were asked to brief the following issues: the jurisdiction of the court to make a determination regarding the ownership of the property; the jurisdiction of the court to divide the proceeds between Mikel and Wharfage, Inc.; and, whether the parties were entitled to have a jury determine the value of the three parcels.

The issue of just compensation was tried to a jury June 13–14, 1989. The jury determined that just compensation for the entire 9.41 acres was $188,000. Subsequently title was vested in the United States and the money was deposited into the registry of the court.

After the issues were briefed, it was decided that the court, sitting without a jury, would resolve both the title dispute and the proper distribution between the parties of the funds in the registry of the court. *See United States v. Reynolds*, 397 U.S. 14, 19, 90 S.Ct. 803, 806–807, 25 L.Ed.2d 12 (1970). To that end, a hearing was held on October 5, 1989. The issues are now ripe for resolution. This opinion shall constitute the court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

*Background*

The facts were developed at the hearing before this court by testimony and through the parties' submissions. Although the entire history of the tracts of land has been brought to the court's attention, only so much of it as is necessary to an understanding of the parties' arguments will be related here. The land has an interesting history which is detailed in the *City of Fort Smith v. Mikel*, 232 Ark. 143, 335 S.W.2d 307 (1960).

By deed dated November 20, 1958, William Mikel conveyed an undivided one-half interest in the lands to Lyman L. Mikel. After this conveyance, the City of Fort Smith brought suit to quiet its title to certain lots within the plat of West Fort Smith and the "area lying between such described lots and the Arkansas and the Poteau Rivers on the west." *City of Ft. Smith*, 232

Ark. at 144, 335 S.W.2d 307. The Supreme Court described the property involved thusly: "The lots were Lots 1 to 19, in Block 3; Lots 1–16, in Block 4; and Lots 1 to 7, in Block 6, of West Fort Smith, an addition to the City of Fort Smith, Arkansas ...." *Id.* A portion of the Mikel's land was involved in this quiet title action.

William and Lyman Mikel retained the Sexton, Holland & Morgan law firm to undertake the defense of the quiet title action. By letter dated June 26, 1959, Sam Sexton, Jr., of the Sexton, Holland & Morgan law firm confirmed the agreement. *Joint Exhibit 2, Letter of June 26, 1959.* The letter described the lands involved as being "all that land laying west of the plat of West Fort Smith, Indian Territory, North of the Boaker Scissors Factory. Said land being bordered to the west and north by the Poteau and Arkansas Rivers." The fee agreement was as follows:

> "We propose to pay 50% of the actual cost of defending this action and you agree to pay the remaining 50%. At the conclusion of the litigation we agree to accept, and you agree to pay, as our fee, an undivided 50% interest in the title to *the lands which are in litigation.*" (Emphasis added).

*Id.*

An answer was filed on behalf of William Mikel and his wife in the quiet title suit. *Joint Exhibit 2, Statement & Findings of the Chancery Court of Sebastian County Arkansas.* The lands at issue were described as follows:

> The statutory notice to quiet title, proof of the publication of which is among the papers in the case describe the lands as being:
>
>> 'All of Block 3, All of Block 4, and Lots 1 to 7 inclusive in Block 6, West Ft. Smith, an addition to the city of Ft. Smith, Arkansas according to a survey made by John F. Fisher, United States Surveyor June 28, 1904, and recorded in the office of the circuit clerk in Sebastian county, Arkansas.'
>
> This plat by John F. Fisher is the plat referred to by all parties at the trial and appears of record in Plat Book ONE of

Ft. Smith district of Sebastian County, Arkansas at page 40 and also at page 70 thereof.

*Id.*

The Chancery Court found "that the City of Ft. Smith is entitled to have its title quieted to those lands described in its petition as Block 3, Block 4 and Lots 1 through 7 incl. Block 6 of West Ft. Smith, Arkansas according to the Fisher plat." *Id.* The court further found that "[t]here being no proof of accretions to the lands owned by the City, the court finds that the city's prayer as to the lands between the plat area and the Arkansas and Poteau rivers should be denied." *Id.* The opinion of the Chancery Court was affirmed on appeal. *See City of Ft. Smith v. Mikel,* 232 Ark. 143, 335 S.W.2d 307 (1960) (City of Fort Smith was unable to show any title to the area between the platted lots and the rivers).

After the favorable termination of the lawsuit, a proposed deed was drawn up by Mr. Morgan of the Sexton, Morgan & Holland law firm. In the proposed deed William Mikel and Telee Wingfield Mikel, his wife, and Lyman L. Mikel and Doris J. Mikel, his wife, conveyed an undivided one-half interest in the lands to Sam Sexton, Jr., John G. Holland, and Lawrence S. Morgan. The land was described as follows:

> The Northwest Nine and 62/100 (9.62) acres of Lot one (1) of Section Eight (8), Township Ten (10) North, Range Twenty-seven (27) East, and Lot One (1) less fifteen and 40/100 (15.40) acres reserved for West Fort Smith, and Lot Two (2) less 20/100 (0.20) acres reserved for West Fort Smith, and the North Thirteen and 14/100 (13.14) acres of Lot Three (3) and Lot Four (4) less six and 90/100 (6.90) acres reserved for West Fort Smith, and Lot Five (5) less five and 60/100 (5.60) acres reserved for West Fort Smith, and Lot Seven (7) less ten and 50/100 (10.50) acres reserved for West Fort Smith, and the Southeast Quarter (SE/4) of the Southeast Quarter (SE/4) of the Southwest Quarter (SW/4) of Section Thirty–Four (34), Township Eleven (11) North, Range Twenty-seven

(27) East, EXCEPTING, however, the following tract: That part of the Arkansas portion of such lands which lies East of the center line of the Poteau River and South of the Boaker Scissors Factory, where now situate.

Ms. Mikel acknowledges that this paragraph of the deed description describes land which includes both Tract "A" and "B".

The deed by way of further description contained the following two clauses:

Being the same lands described in Unallotted Land Deed No. 12402, dated July 25, 1918, as amended by Unallotted Land Deed No. 15053, dated July 28, 1919, both executed by the Choctaw Nationa and the Chickasaw Nation, Grantors, in favor of William J. Ray, Grantee; and Being the same lands involved in Case No. 9430, in the Chancery Court for the Fort Smith District of Sebastian County, Arkansas, in which the City of Fort Smith, Arkansas, was party plaintiff, and the above named Grantors, along with other persons named therein, are parties defendant.

Morgan referred to the latter two paragraphs as "Mother Hubbard" clauses.

The proposed deed proved unacceptable to the Mikels. Lyman Mikel, an attorney as well as one of the landowners, wrote up some changes he wanted made in the deed. These changes were inserted into the final draft by the law firm. Ms. Mikel testified that the changes were intended to make clear what exactly the firm was receiving.

The changes made, unfortunately, had anything but the desired effect. The last sentence of the first paragraph quoted *supra* was altered and a new paragraph added. The additional language provided as follows:

EXCEPTING, however, the following tract: That part of the Arkansas portion of such lands which lies South of Lot Seven (7), Block Six (6), of West Fort Smith and that part of the Oklahoma portion of such lands which lies West of the Center Line of the Poteau River, more particularly described as follows, to-wit:

Beginning at a point on the Southwest Corner of Lot Seven (7), Block Six (6) of the Plat of West Fort Smith, thence running in a Westerly direction along the West Boundary Lines of Lots Seven (7) and Six (6) of Block Six (6), thence along the West Boundary Line of Second Street to the Southwest Corner of Lot Nine (9) of Block Four (4), thence along the West Boundary Line of said Lot Nine (9) and Lot Eight (8) of Block Four (4), thence along the West Boundary Line of First Street to the Southwest Corner of Lot Fourteen (14) of Block Three (3), thence in a Northerly direction along the West Boundary Line of Lots Fourteen (14), Fifteen, (15), Sixteen (16), Seventeen (17), Eighteen (18), and Nineteen (19) of Block Three (3), thence along the West Boundary Lines of Choctaw Avenue and the Missouri Pacific Railroad Right of Way to a point in the center of the Missouri Pacific Railroad Bridge Fifty (50) feet Northeast of the Southwest Boundary Line of said Choctaw Avenue, thence in a Westerly direction up the Center of said Missouri Pacific Railroad Bridge to the Current of the Arkansas River, thence up the Arkansas River to the mouth of the Poteau River where same intersects the Arkansas River, thence up the Center Line of the Poteau River to a point West of the Southwest Corner of Lot Seven (7) of Block Six (6) of the Plat of West Fort Smith, thence in a straight line to said Southwest corner of Lot Seven (7), point of beginning.

The added paragraph obviously does not purport to *more particularly* describe the exception set out in paragraph one. The second paragraph in fact describes only Tract "A". Ms. Mikel contends this paragraph accurately describes the lands being conveyed to the grantees. The remaining two paragraphs were identical to those contained in the first draft of the deed. This deed was executed by the parties on March 5, 1962.

Mr. Morgan, a member of the law firm and a grantee, stated he believed he prepared both the first and second drafts of the deed. Morgan testified that Lyman

Mikel prepared the additional language and that when it was added the description was not reviewed or verified in any manner. In fact, Morgan stated he did not even know what the language meant. Morgan was unconcerned because he felt the two "Mother Hubbard" clauses would cure any uncertainty in the descriptions and would ensure the law firm got what they intended. The first of the two "Mother Hubbard" clauses referring to Unallotted Land Deed No. 12402, however, encompasses land on the other side of the Poteau River. This land lies in Oklahoma and was, of course, not involved in the quiet title litigation. Nor does anyone contend it was involved in the quiet title suit. This fact would appear to explain the reason for the exception of the Oklahoma portions of the land. The second clause *quoted supra* references the same lands involved in Case No. 9430 in the Chancery Court.

Subsequently, Doris Mikel acquired the interests of William Mikel, Telee Mikel and Lyman Mikel. Sexton, Morgan, and Holland, caused to be formed Wharfage, Inc. and by deed dated November 27, 1962, conveyed their interest to Wharfage. Thus, at the time this condemnation suit was initiated title to the disputed land was divided between Doris Mikel and Wharfage, Inc.[1]

*Discussion*

■ The determination of who has title in an eminent domain proceeding is treated as a proceeding in the nature of interpleader. *United States v. 350.925 Acres of Land,* 588 F.2d 430, 431 (5th Cir.1979). Thus, each claimant bears the burden of establishing his right to the property in question. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d,* § 1714 at 585–86.

■ In construing deeds, the basic rule is that the court should "ascertain and give effect of the real intention of the parties, particularly of the grantor, as ex-

pressed by the language used when not contrary to settled principles of law and rules of property." *Gibson v. Pickett,* 256 Ark. 1035, 1039, 512 S.W.2d 532 (1974). Primary consideration is to be given to the intent of the grantor. *Bennett v. Henderson,* 281 Ark. 222, 223, 663 S.W.2d 180 (1984). Where the deed is ambiguous, it is the duty of the court to ascertain the parties' intention and "try to make all parts of the instrument harmonize." *Wynn v. Sklar & Phillips Oil Co.,* 254 Ark. 332, 341, 493 S.W.2d 439 (1973).

■ When the deed is uncertain, doubtful, or ambiguous, the instrument is to be construed against the party who prepared it. *Bennett v. Henderson,* 281 Ark. 222, 224, 663 S.W.2d 180 (1984). This principle of construction is not particularly helpful given the facts of this case. The language in the deed as was noted, *supra,* was drafted partially by a member of the law firm and partially by one of the grantors. The result, of course, was ambiguous. In fact, the ambiguity in the circumstances here is difficult to understand. One of the grantors and all of the grantees were lawyers who were well aware of the significance of the land description. The grantee law firm had, in fact, just successfully concluded years of litigation concerning the lands at issue.

■ In seeking to ascertain the parties' intent the court may look beyond the particular words and phrases and look to the "whole context of the agreement or deed." *Id.* The court may consider the "circumstances existing at the time of the execution of a contract and the situation of the parties who made it" as well as "subsequent statements, acts and conduct." *Id.*

■ In the instant case, the deed in question was a conveyance in payment of attorneys fees. The relationship between an attorney and client is one of trust and confidence. When a transaction is ques-

---

1. In 1975 the United States of America condemned a temporary easement upon certain tracts of land involving the ownership interest of Wharfage, Inc. and Doris J. Mikel. United States District Judge Paul X. Williams made certain findings of fact and conclusions of law in regard to this land on September 3, 1975. Although these were provided to the court, the descriptions of the tracts were inadequate to aid this court in making the ownership determination in the instant case.

tioned the burden is on the attorney to prove the fairness of the transaction. *Swaim v. Martin,* 158 Ark. 469, 251 S.W. 26 (1923). Although the fairness of the transaction is not being directly questioned, the dispute surrounds the extent of the land being conveyed. Mr. Sexton testified the conveyance was intended to encompass both Tracts "A" and "B" while Ms. Mikel contends only Tract "A" was involved. Thus, the relationship of the parties must be considered in the court's overall assessment of the situation.

■ After having reviewed the documentation submitted as well as the testimony of the parties the court believes the second paragraph of the deed accurately describes the land conveyed. A number of factors have caused the court to reach this conclusion.

First, all parties acknowledged in their testimony that everyone understood that Sexton, Holland and Morgan would receive 50% of the land involved in the quiet title suit. Second, the deed specifically refers to the Chancery Court case and purports to convey an undivided 50% interest in the *same lands*. Thus, reference to the description of the land involved in the Chancery Court litigation was a matter contemplated by the parties to the deed. Resort to the Chancery Court opinion and the opinion of the Supreme Court both quoted, *supra,* reveals the descriptions utilized are of the land lying in Tract "A". Sexton testified the land was all of the land bordered by the rivers including the land to the north of the abandoned railroad right-of-way. This is not borne out by the opinions of the Chancery and Supreme Court. Both contain the particular descriptions quoted, *supra,* and describe the land adjacent to specified lots in Blocks 3, 4, and 6. The contention as described in the opinions is that no land existed between those particular lots and the river. The written opinions are conclusive on the issue of what lands were involved.

Third, the second paragraph of the deed description specifically describes Tract "A". The court is puzzled by the change made to the last sentence of paragraph one. That sentence would lead one to believe the second paragraph more particularly describes the exception. However this interpretation is implausible because the excepting clause describes lands lying south of lot seven, block six, of West Fort Smith and the Oklahoma portion of such lands lying west of the center line of the Poteau River. Accordingly, the only plausible interpretation is that the second paragraph was meant to more particularly describe the lands being conveyed. Obviously, the language was inserted to effect a change in the unacceptable first draft of the deed. The testimony of Ms. Mikel added further credence to this view.

Finally, Ms. Mikel testified that she had leased Tract "B". Although Sexton was aware of the lease, no claim to the proceeds was made on behalf of Wharfage, Inc. This, of course, is not of great significance; however, it does seem inconsistent with a claim of ownership.

Accordingly, the court concludes that at the time this condemnation case was filed, Doris Mikel held title to 100% of Tracts "B" & "C" and 50% of Tract "A" and Wharfage, Inc. held title to 50% of Tract "A". The court, however, has no evidence before it which would allow it to divide the proceeds of the condemnation action. Despite their knowledge that this was an issue in the case, the parties failed to present any valuation evidence separating the three parcels. The suggestion was made that the land could be valued on a per acre basis. Even if the court were inclined to agree with this suggestion, which it is not, the parties failed to present any evidence establishing the acreage of the various tracts. In any event, it is obvious to the court, however, that the land is not of uniform value, *i.e.* each acre is not worth exactly the same regardless of its location.

Tract "A" for instance contains the only area with rock outcropping suitable for the anchoring of boats, a fact that was emphasized to the jury. In fact, there was much testimony, and argument by the landowners that this unique feature greatly enhanced the value of the entire tract. In addition both Tracts "A" and "B" border

the river while Tract "C" is a "Y"-shaped piece of land consisting of the abandoned railroad right-of-way.

The court strongly indicated its view in this regard at the June hearing, and, in fact, that issue was not tried at the June 13 trial because the parties were not prepared to offer evidence on the relative value of the tracts. This case has been "around" long enough and enough trials and hearings have been held. Since the parties have repeatedly neglected to provide the court with evidence from which it can divide the condemnation proceeds among them, the court will direct the Clerk of Court to disburse the funds remaining in the court's registry to the parties jointly, and this matter will be finally terminated.